Moncure, J.
In April 1844 the appellee Crawford bought of the appellant Bell a parcel of horses, at the price of 725 dollars, promising to pay the money “ punctually at six months,” aud to give security for its payment. On the 18th of July 1845, Bell brought an action of assumpsit against Crawford, in the Circuit court of Augusta, to recover the money. On the 15th of November 1845, the defendant plead non assumpsit; and at the same time filed an affidavit, stating that he had a defence consisting of a set off, to an amount greater than the whole amount of the plaintiff’s demand, which in the opinion of his counsel constituted- a good legal defence to the action ; and also filed, as the set off referred to in the affidavit, a note of the defendant to B. Davis dated the 24th of December 1839, for 1700 dollars, payable by draft, one half on the 1st of April, and the other on the 1st of May next after the date. This set off was the only defence relied on by the defendant ; though no notice seems to have been taken of it upon the record. It was resisted by the plaintiff on the ground that it had been paid, and also that it was barred by the act of limitations. The defendant insisted that it was taken out of the operation of the act, by an acknowledgment or promise in writing, and also by part payment. The case was tried at Novem *114 ber term 1848, when a verdict and judgment were rendered for the defendant. Exceptions were taken by the plaintiff to various opinions given by the Court upon the trial, and to the opinion of the Court overruling his motjon for a new trial; and these opinions are now to be reviewed by this Court. I will notice them, or such of them at least, as 1 deem it necessary to notice, in the order in which they are presented on the record.
1. The plaintiff moved the Court to exclude from the jury, all evidence introduced by the defendant to prove his set off, upon the ground that he had not filed with his plea an account of the set offs, as the statute directs.
The Court overruled this motion ; and I think rightly overruled it. The defendant, substantially if not literally, complied with the directions of the statute by filing with his plea the note in writing which was the subject- of his set-off. The statute does not require the set-off to be noticed on the order hook. It requires an account to be filed “ stating distinctly the nature of the set-off, and the several items thereof. The object of this requisition is to give the plaintiff full notice of the character of the set-off. If the set-off consist of a single item, as of a promissory note, the best notice which can be given of the character thereof, is to file the note with the plea. No description of the note which could be given in an account could be more plain and particular than the note itself. The record shews that the plaintiff had full notice of the character of the set-off, and that he was not taken by surprise on the trial. He did not object that an account had not been filed until after all the evidence and arguments had been fully heard, and to have allowed the objection then, would have been to have taken the defendant by surprise.
3. The plaintiff moved the Court to exclude from the jury all the evidence introduced by the defendant, in *115 support of the set-off, on the ground that it was barred by the statute of limitations; and that said evidence in law was not sufficient to remove the bar.
The cause of action on the set-off accrued on the first days of April and May 1840, and the suit having been instituted on the 18th of July 1845, it was conceded that the set off was barred unless it could be taken out of the operation of the statute. The defendant insisted that it was taken out, on the ground, either of a new acknowledgment or promise in writing, or of a part payment, made within five years before the institution of the suit. The new acknowledgment or promise relied on by the defendant consisted of a letter from the plaintiff to him in these words.
“ Mr. John Crawford.
I give you above 6 drafts for $> 300 each, payable at 40, 50, 60, 70, 80 and 90 (days,) which I hope will suit you. It is the shortest time I could draw to be ready to pay ; when you come back we can settle. Take care of this, and it will shew what you have received.

James Bell.”

The part payment relied on consisted of the drafts mentioned in said letter, which were proved to have been drawn on and paid by Jacob Shook of the City of Richmond. The letter has no date. But it appearing that the draft at 40 days was paid on the 19th December 1840, the fair presumption is that the letter was written forty days before, or on the 9th November 1840; which was within five years before the institution of the suit; but not the filing of the set-off.
Conceding, for the present at least, that the time of the institution of the suit, and not of the filing of the set-off, is the period to which the limitation of the set off is properly referrible, and also that a part payment *116 will take a debt out of the operation of the statute ; let us proceed to enquire whether there was such an acknowledgment or promise in writing, or such a part payment, in this case, as will take the set off out of the 0perati0n of the statute ? To avoid confusion I will consider the questions separately.
First. As to the acknowledgment or promise in writing. Shortly after the passage of the act of 9 Geo. iv., ch. 14, called “Lord Tenterden’s act,” it was stated by its author, Lord Tenterden, that the object of the act was the prevention of fraud and perjury in prov ng an acknowledgment, or a new promise, by rendering it necessary to procure that in writing for which words were previously sufficient. Dickenson v. Hatfield, 24 Eng. C. L. R. 204. And it was said by Tindal, Chief Justice of the common pleas, that the statute did not intend to make any alteration in the legal construction to be put upon acknowledgments or promises made by the defendants, but only to require a different mode of proof. To enquire therefore whether, in a given case, the written document amounts to a written acknowledgment or promise, is no other enquiry than whether the same words if proved, before the statute, to have been spoken by the defendant, would have had a similar operation and effect. Haydon v. Williams, 20 Eng. C. L. R. 86. Our act of 3d of April 1838, was copied, with some alterations, from Lord Tenterden’s act; and having been passed after the above cited cases were decided, should, I think, receive the same construction, which in those cases was put upon the English act. In deciding therefore whether the letter from Bell to Crawford before mentioned, is a sufficient acknowledgment or promise to take the set off out of the operation of the statute of limitations, it is necessary to enquire whether the words of the letter if proved before the act of April 1838, to have been spoken by Bell, would have had a similar effect.
*117 The operative words of the letter are, “ when you come back we can settle.” And the question is, whether by the words “ we can settle,” the plaintiff promised to pay to the defendant a particular debt, or made a direct, unqualified admission of a present, subsisting debt from which a promise to pay would naturally and irresistibly be implied; or merely promised to settle accounts with the defendant for the purpose of ascertaining and paying what might be due to him.
If the former be the true construction of the words used, I admit that the set off is thereby taken out of the operation of the statute of limitations. It was not necessary that the amount of the debt should have been specified in the letter. The particular debt to which the letter refers may be identified by extrinsic evidence ; and has been so identified to be the amount of the set-off, if the words aforesaid imply a promise to pay a debt, and not to settle an account.
But if by the words in question the plaintiff merely promised to settle accounts with the defendant for the purpose of ascertaining and paying what might be due to him, I am clearly of opinion that the set off is not thereby taken out of the operation of the statute.
In the case of Bell v. Morrison, 1 Peters R. 351, it was proved that one of the defendants expressed his willingness “to settle with the plaintiff,” but the books and papers were in the hands of another of the defendants; said “ he was anxious that the plaintiff’s account should be settled ;” that he knew the defendants were owing him; that he was “ getting old and wished to have the business settled;” and proposed to give the plaintiff 7000 dollars, in satisfaction of the claim ; and letters of several of the defendants, containing admissions of a like nature, were exhibited and proved on the trial. The Supreme court decided that this evidence was insufficient to take the case out of the statute of limitations; and Story, Justice, in delivering the opin *118 ion of the Court, comments at length on the wisdom and policy of the statute; and makes several observations which are so appropriate to the present case that I hope I may be excused for quoting some of them. On page 360 he says, “ If we proceed one step further and admit that loose and general expressions from which a probable or possible inference may be deduced of the acknowledgment of a debt by a Court or jury; that, as the language of some cases has been, any acknowledgment however slight, or any statement not amounting to a denial of the debt; that any admission of the existence of an unsettled account, without any specification of amount or balance, and however indeterminate and casual, are yet sufficient to take the case out of the statute of limitations, and to let in evidence aliunde to establish any debt, however large and at whatever distance of time; it is easy to perceive that the wholesome objects of the statute must be in a great measure defeated, and the statute virtually repealed.” Again on page 366 he says, “ The evidence is clear of the admission of an unsettled account as well from the letters of Butler as the conversation of Morrison. The latter acknowledged that the partnership was owing the plaintiff, but as he had not the books he could not settle with him. If this evidence stood alone it would be too loose to entitle the plaintiff to recover anything. The language might be equally true whether the debt were one dollar or ten thousand dollars. It is indispensable for the plaintiff to go farther and to establish by independent evidence the extent of the balance due him, before there can arise any promise to pay it as a subsisting debt. The acknowledgment of the party then does not constitute the sole ground of the new implied promise ; but it requires other intrinsic aid, before it can possess legal certainty. Now if this be so, does it not let in the whole mischief intended to be guarded against by the statute ? Does it not enable the party *119 to bring forward stale demands, after a lapse of time when the proper evidence of the real state of the transaction cannot be produced ? Does it not tend to encourage perjury, by removing the bar upon slight acknowledgments of an indeterminate nature ? Can an admission that something is due, or some balance owing, be justly construed into a promise to pay any debt or balance which the party may assert or prove before a jury ?” &c.
Bell v. Morrison has, ever since its decision in 1828, been regarded in the United States as a leading case on the statute of limitations ; and as Angelí truly says in his work on Limitations, p. 245, upon the authority of the language of the Court by Mr. Justice Story in that case, the State courts in many instances have relied with emphatic confidence. Of none of them is that remark more true than of the Courts of Virginia. In this State the doctrine settled in that case has been recognized, and carried to its fullest extent, as the two cases next cited will shew.
In Ayletts v. Robinson, 9 Leigh 45, the action was assumpsit on an account for carpenter’s work amounting to 320 dollars, commencing in March 1823 and ending in June 1825. The debtor died in 1831. The suit was brought in 1833, against his execiitor. The defence relied on was the statute of limitations. To take the case out of the statute, the plaintiff proved in 1829 he applied to the debtor to settle the account; and the debtor said, “ I am too unwell to do business now, when I am better I will settle your account.” The Court decided that the evidence was insufficient to take the case out of the operation of the statute. Parker, J. cited with approbation the modern cases which decided that a “promise or acknowledgment to take the case out of the statute must be an express promise, or such an acknowledgment of a balance then due, unaccompanied by reservations or conditions, as that a jury ought *120 to infer from it a promise to pay.” “ It is plain,” he said, “ that the declarations of the testator in the case now before us were made in reference to an unsettled demand, and therefore very unsatisfactory evidence of the quanium 0p damages.” If the promise to be inferred from these declarations “ is to be taken,” he further said, “ as a promise to pay any balance that may be found due on a future settlement between the parties, then that settlement ought to be averred, and that a certain balance was found thereupon to be due.” See his opinion in full, and also the opinions of Brockenbrough and Brooke, in same case.
In Sutton v. Burruss, 9 Leigh 381, the action was assumpsit on an open account. Plea, the statute of limitations. Proof, that within five years the defendant-acknowledged the items of the plaintiff’s account to be just, but said that he had some offsets ; and that at a subsequent time, the defendant promised the plaintiff that he would settle all their accounts and differences fairly, and would not avail himself of the act of limitations. It was held that this proof was not sufficient to justify the jury in finding for the plaintiff. Parker, J., after shewing that the proof was insufficient to sustain the count of insimul computasset, said, “ I am inclined indeed to think that under no form of pleading, could the acknowledgments and promises proved in this case, coupled with a claim of offsets to an indefinite amount, have had the effect of taking the case out of the statute of limitations. I had occasion to advert to the modern decisions on this subject in the recent case of Ayletts v. Robinson, and I heartily approve their spirit. If an acknowledgment is relied on, it ought to be a direct and unqualified admission of a present subfisting debt from which a promise to pay would naturally and irresistibly be implied. When the amount is left open and is to depend on proof aliunde, the wholesome objects of the statute in affording security against *121 stale demands would be defeated,” &c. Cabell, J.'who did not sit in the case of Ayletts v. Robinson, after citing with approbation a portion of Story’s opinion in Bell v. Morrison, said, “If this1 principle be correct, (and I believe it to be incontrovertibly so,) no promise which is founded merely on the consideration of the old debt, and which still leaves the party exposed to the inconveniences which the statute was intended to remedy, ought to revive the old debt, and take the case out of the statute.” And after stating the facts of the case, he further said: “ The utmost that ever a jury could infer from all this is, a promise to pay an unascertained balance. That balance might be one cent only; or it might be within one cent of the original amount of the plaintiff’s demand. What it really was, depended on testimony aliunde. This promise then certainly left the defendant exposed to all the inconveniences arising from the loss of testimony in relation to his offsets ; and we cannot therefore give effect to it, without frustrating the great object of the statute,” &'c. Tucker, P. who had dissented from the opinion of the Court in Ayletts v. Robinson, said he felt bound to follow the decision in that case, and did not see how the acknowledgment in the case of Button v. Burruss could be considered as taking the demand out of the operation of the statute.
I have stated these two cases so much at length because they seem to me to be directly in point, and to have settled the law of Virginia upon the subject. The statute of April 1838 was passed about the time they were decided; and was dictated by the same policy of giving effect to the statute of limitations and the intention thereof, and of avoiding the frauds and perjuries which had arisen in regard to parol promises and acknowledgments. I think there is nothing in the proviso to that statute, “ that every such written promise or acknowledgment shall be held and taken to be a *122 drawing down of the original debt or contract to the date of the said promise or acknowledgment,” which can have the effect of reviving the doctrine of what were called in the argument “ the Mansfield cases,” or 0£ taking any case out of the statute of limitations which would not have been taken out by the same promise or acknowledgment if made before the act of 1838 was passed. Such a construction of the proviso would be opposed to the obvious intention of the legislature and, as has been properly said, would “ contribute as much to thwart the policy of the statute of limitations as the rest of the act will to advance it.” Joynes 225, 226. That proviso was, I think, produced by the opinions expressed by several of the Judges in Butcher v. Hixton, 4 Leigh 519, and The Farmers Bank v. Clarke, Id. 603, that the new promise does not bring down the old cause of action but creates a new one, on which the action must be brought; and that in an action of debt on a promissory note the case will not be taken out of the statute by proof of a new promise, unless there be a general indebitatus count in the declaration. And I think the object of the proviso was, and its proper construction is, to authorize, if not require, the suit to be brought on the original cause of action, wherever, and only wherever, the new promise or acknowledgment would have been sufficient, if the proviso had not been adopted, to have taken the case out of the statute of limitations. So that in an action of debt on a promissory note, counting only on the note itself, proof of a new promise in writing would under the proviso, take the case out of the operation of the statute. So also in any action of debt in assumpsit on a simple contract, counting on the original cause of action, proof of a new promise in writing and of the performance of any conditions annexed thereto, would under the proviso, take the cause out of the operation of the statute. In fine, the operation of the proviso, according to my construc *123 tion of it, is to authorize a recovery only to the same extent and against the same parties in a suit upon the original cause of action, as in a suit upon the new promise. This construction gets rid of a technical difficulty, is consistent with the words and intention of the act of April 1838, and does not thwart the policy of the statute of limitations.
I think therefore it may be fairly concluded that in Virginia a promise in writing to settle an account, however plain and positive such promise may be, is not sufficient to take the account out of the operation of the statute. And now let us see whether the written promise in this case was to settle an account or pay a debt. I think it was clearly the former. The proper meaning of the operative word in this case “ settle” is, “ to go into a settlement, to adjust, to fix or determine a balance, which may be on the one side or the other.” But it is certainly a word of somewhat equivocal import, and may by the contextor the surrounding circumstances be explained to mean “_pay.” In each of the cases of Bell v. Morrison, Ayletts v. Robinson, and Sutton v. Burruss, the word “settle” was the operative word used, and the question arose whether it was used in its ordinary acceptation or was intended to imply a promise to pay, and in each of them it was construed in the former sense. In Ayletts v. Robinson, Parker, J. said, “I do not mean to say that a promise to settle an account may not under some circumstances, be equivalent to a promise to pay, so as to take a case out of the statute of limitations. It depends upon the nature of the application and the terms of the answer; as evincing a mere intent to adjust the account and see where the balance lies, or an acknowledgment of a stated balance ; which to settle means to pay. Thus if one, upon an account being presented to him says, ! it is right and I will settle it at a future day,’ there could be no doubt about his meaning, and a *124 jury would infer a promise. But in the present ease,” &c. Is the proper meaning of this word “ settle” varied in this case either by the context or the surround- , mg circumstances ?
jt jg not varie(j py the context. The words of the letter are not, “ your account is right, and I will settle it: ” nor even, “ I will settle your account.” But the words are, “ when you come back we can settle. ” This form of expression “ we can settle, ” plainly implies an accounting together, and not a promise of payment by one to another. These words, whether taken alone or in connection with the context, can hardly be said to be of equivocal import, so as to admit of extrinsic evidence to explain them.
But let us look to the extrinsic evidence in the case and see if it will shew that the words were used in any other than their ordinary and proper sense of “ accounting together.”
Two witnesses were relied on by the defendant to furnish means of explaining the sense in which the words were used, and of shewing that the plaintiff thereby intended to promise payment of the former’s set-off. The first was Jacob C. Holer, who proved that in November 1840, at the defendant’s request, he presented to the plaintiff an account amounting to 2504 dollars 7 cents, consisting of four different items, of which the note now claimed as a set-off was one ,• at the foot of which account was an order signed by the defendant, requesting the plaintiff to draw on Mr. Shook at sight for 2504 dollars, and hand over the draft to the witness. That the plaintiff examined the account and order, but told witness he did not know what he could do till he heard from his agent Shook in Richmond ; that he was going to Staunton that day and expected a letter from Shook; and if he heard from him would send to defendant, or witness for him, drafts for as much as it would be safe for him to draw on Shook for. That *125 he raised no objection to said account, and did not deny that he owed the amount, although he did not say that it was right. That a day or two thereafter witness received from the plaintiff a letter enclosing the letter in question from the plaintiff to the defendant, and the six drafts for 300 dollars each therein referred to; and that witness handed the said letter in question and the said account and order, to the defendant, in whose custody he supposes them to have since remained. I think there is nothing in this evidence which can have the effect of explaining the words of the letter so as to make them imply a promise of payment. The mere failure to dispute an account, or to claim offsets against it, is slight evidence of an acknowledgment; and instead of having the effect of varying the ordinary meaning of tvords used by the supposed debtor in a letter to the creditor concerning the debt, Avritten about the time of the presentation of the account, could itself be explained away by such letter, if the natural and ordinary import of the words of the letter excluded the idea of such an acknowledgment. The account was not left in the plaintiff's hands. A day or two after it was presented to him, probably the next day, he wrote the letter in question and enclosed that and the six drafts on Shook, to the witness for the defendant. That letter affords written and positive evidence of a promise, not to pay, but to settle an account; and repels the parol and negative evidence of a promise to pay, which might be implied from a mere failure to dispute the account. So much for the evidence of Roler. The other witness was George W. Hulvey, who proved that in the fall of 1840 the defendant received from the plaintiff six drafts for 300 dollars each, and not being satisfied with the amount sent witness to see the plaintiff with a statement in writing, intended to shew hoAv much more he desired to have. That he sheAved the statement to the plaintiff, who upon examining it, remarked that he could not do *126 anything more at that time, as he had no more money hi Mr. Shook’s hands; and that he wanted to have a settlement with Mr. Crawford, by which time he would probably have more money in Shook’s hands. And }16j the witness, thought he left the statement in the plaintiff’s hands. If there were any doubt as to the meaning of the words “ we can settle” in the letter, I think it would be completely removed by the evidence of Hulvey, who proved that the plaintiff said “ he wanted to have a settlement with the defendantthat he wanted such settlement to precede any further payment : and therefore that he could not have intended by the words “ we can settle,” used in the letter, to promise to pay the entire balance of the defendant’s account after crediting the amount of the six drafts.
The other facts proved in the case, instead of shewing that the plaintiff iutended in his letter to promise to pay the entire balance of the account after crediting the drafts, I think, strongly tend to shew not only that the plaintiff never intended to promise to pay such balance, or to admit that he owed it; but even that the defendant considered his accounts with the plaintiff unsettled, and the balance due upon them, if any, uncertain. The note of the defendant to the plaintiff on which the suit was brought, tends strongly to that conclusion. That note is dated April 4th, 1844, and by it the defendant promised to pay to the plaintiff .725 dollars, the purchase money of the horses, punctually at six months. It was proved by a witness that the defendant agreed if he bought the horses to give security for the purchase money and pay it punctually when due. It was proved by another witness that the note for 725 dollars was assigned to him by the plaintiff in part payment for cattle. That some time thereafter, and before the note became payable, he enquired of the defendant about it, who told the witness that the claim was right and would be paid when due: that there were unsettled mat *127 ters between the plaintiff and defendant, and that he did not think there was much coming either way on that account; and witness understood from defendant that that account would not prevent him from paying the 725 dollars when due. That when the note became due the witness called on defendant for payment, who refused to pay the note, alleging that there were unsettled accounts between the defendant and plaintiff: that he had an offset against the claim and did not consider that he owed the plaintiff anything. It did not appear from any evidence in the cause that after the interview between the witness Hulvey and the plaintiff before referred to, there was ever any settlement of accounts between the plaintiff and defendant; or, until after the purchase of the horses in 1844, any demand by the latter of the former for such a settlement, much less for the payment of a specific debt, or an ascertained balance of an account. It was proved by a witness that the deputy sheriffs of Augusta of whom the defendant was one, were in the habit during the year 1838 and previous years of letting the plaintiff, who was largely engaged in the cattle business, have as much money as they could spare, with the understanding that he would have funds ready for them to pay in the revenue. That prior to 1838, there had been no disappointment: but ■ that in December of that year his drafts on Shook were not paid. Among those drafts was one in favour of the defendant for 2490 dollars, which was introduced as evidence by the defendant, and is copied in the record. It is dated November 22, 1838, and the 2490 dollars is therein expressed to be “ the sum he had paid for me, and I am bound to pay him in Richmond, that sum, so much of the revenue of Augusta.” It was proved by a witness that on the 3d of January 1839, the plaintiff paid into the auditor’s office 2298 dollars 81 cents, being that part of the revenue from Augusta for 1838 which was due by the defendant. No evidence was of *128 fered to shew the particulars of the sum of 2490 dollars mentioned in the draft. It was contended by the counsel for the appellant that at least one of the items of the account presented to the plaintiff by the witness jq0ierj t0 wit: the bond of plaintiff to defendant for 868 dollars 50 cents, was settled in that draft. The bond is copied in the record, is dated the 12th of August 1838, and the amount is therein expressed to be money borrowed of the defendant, “ to be returned in time to pay the revenue of this year.” The account aforesaid consisted of four items, two of which had accrued before the date of the draft for 2490 dollars, and were supposed in the argument of the appellant’s counsel to have been settled therein. The other two consisted of the note to Davis for 1700 dollars, dated 24th December 1839, payable in April and May 1840, and being the set-off now claimed by the defendant, and a bond of 71 dollars dated 15th November 1839. The appellant’s counsel contended that the six drafts of 300 dollars each were paid on account of the two last mentioned items. Davis proved that he assigned the note which is the set-off in this case to the defendant. That when he assigned it he thought it would be punctually paid, and so told the defendant. That sometime after was due, the defendant informed him that the plaintiff had not paid it, and requested him to urge the plaintiff to do so ; saying nothing of any other claim he had against the plaintiff. That witness did urge the plaintiff to pay it, and plaintiff afterwards informed the witness that he had given the defendant drafts to pay the note. That witness told defendant what plaintiff said, and defendant replied that plaintiff had let him have some drafts but that he had applied, or intended to apply them in part to pay some other debts which plaintiff owed him.
Upon the whole I think that whether we look to the letter itself or to the declarations and conduct of both *129 of the parties and the other extrinsic evidence in the case, we can come to no other conclusion than that the plaintiff did not intend by his letter enclosing the six drafts to promise to pay the balance of the account or to acknowledge it as a subsisting debt. It was argued by the counsel for the appellee that there were hut four items of the account and that the plaintiff had never disputed either of them. He did not dispute them because they were doubtless originally just. If he had expressly admitted them to be originally just that would not have been sufficient. In Clementson v. Williams, 8 Cranch’s R. 72, Chief Justice Marshall said, “ It is not sufficient to take the case out of the act, that the claim should be proved or be acknowledged to have been originally just; the acknowledgment must go to the fact that it is still due.” In Sutton v. Burruss, 9 Leigh 381, the defendant acknowledged the items of the plaintiff’s account to be just; but said at the same time that he had some offsets. This was held by a unanimous Court not to be sufficient even to put the defendant on the proof of his offsets. Judge Cabell said, “ This promise then certainly left the defendant exposed to all the inconveniences arising from the loss of testimony in relation to his offsets; and he cannot therefore give effect to it without frustrating the great object of the statute.” These four items may have been and doubtless were very proper items of an account between the parties : but they may not have been all the items that would have been proper in such an account. There may have been payments and set offs. There was a palpable error on the face of the account which might have been detected almost at a single glance. The plaintiff was charged with one year’s interest too much on 1700 dollars. That this error was not detected, shews that the plaintiff had no idea of assuming to pay the balance of the account; and paid *130 no attention to it except to see that he owed as much as 1800 dollars, which he paid by the drafts on Shook.
There was then no such acknowledgment or promise in writing as will take the set off out of the operatjon Qf ^g statute.
Secondly. Has there been such a part payment of the set off as will take it out of the statute ?
I will have very little to say in answer to this question, as most of what I have said in answer to the preceding applies with at least as much force to that now under consideration. A part payment can have no effect in taking a case out of the statute, except so far as it implies an acknowledgment of a debt, and promise to pay it. If a part payment be made of a particular debt as of a promissory note, it affords strong evidence of an acknowledgment of the balance as a subsisting debt. But the mere fact of payment is insufficient. It must be shewn that the payment was made in part discharge of a larger debt, and of the particular debt sued for. Joynes, p. 124; Tippetts v. Hearne, 4 Tyrw. R. 772. “ The part payment,” as Mr. Joynes correctly says, “ being only evidence of a promise to pay, gives a new action only for so much as the party thereby admits himself to be liable for.” “ Thus when a defendant pays money into Court he does not thereby lose the benefit of the statute, as to the residue of the plaintiff’s demand, because the only effect of the payment into Court is to admit the defendant’s liability for the sum so paid.” See the cases cited by Joynes, p. 130. A payment made on account may or may not amount to an acknowledgment of the balance of the account. “ If the part payment is made under circumstances which shew that the debtor did not intend to recognize his liability, or admit his willingness to pay the balance, it will not avail the creditor against a plea of the statute.” Joynes, p. 128; Linsell v. Bonsor. 29 Eng. C. L. R. 319. We must therefore always look *131 not only to the fact of the payment, but to all the surrounding and attending circumstances to see whether a payment on an account implies an intention to acknowledge the balance of the account and promise to pay it. What the debtor says at the instant of making the payment is the best evidence of his intention, and usually sufficient to explain it. In this case the payment was accompanied by a letter which affords the best possible evidence of the character of the payment and the intention of the plaintiff in regard to the balance of the account. What the meaning of that letter is in this respect, whether construed alone or in reference to all the surrounding circumstances, has already been considered. And the questions whether a promise to pay the balance of the account is implied by the letter as an acknowledgment or promise in writing under the act of April 1838; and whether such promise is implied by part payment, arising out of the drafts enclosed in that letter, are in effect one and the same question, and must receive the same answer. Having already answered the former in the negative, I therefore answer the latter in the same way.
Then did the Circuit court err in refusing to exclude from the jury all evidence introduced by the defendant in support of the set off on the ground that it was barred by the statute of limitations, and that said evidence in law was not sufficient to remove the bar ? I think it did; and that this conclusion necessarily follows from what I have already said. If the evidence taken (and I have taken it) to be all true, shews neither such an acknowledgment or promise in writing, or such a part payment as can take the set off out of the operation of the statute, then the set off must of necessity fall, and with it the evidence offered in its support. If the Court had been moved to instruct the jury that even if they believed the whole of the said evidence it was not sufficient to justify them in finding that the set *132 off was not barred by the statute of limitations, it would have been the same in form with the motion in the case of Sutton v. Burruss, 9 Leigh 381 ; for overruling which, the judgment of the Circuit court was unanimously reversed by this Court. The motions in that case and this, though different in form, are I think the same in substance. The Court no more invades the province of the jury by excluding evidence than by pronouncing it insufficient in law. By one course the evidence is thrown out of the case, and by the other it is destroyed: which in effect is the same thing. In Bell v. Morrison, 1 Peters R. 351, the motion was to exclude the evidence in the very form in which it was made in this case, and the evidence was accordingly excluded. No objection was made by the Supreme court to the form of the motion or instruction in that case.
In the view I have taken of this case, I deem it unnecessary to consider the other questions which arise on the first bill of exceptions. Two of them are important questions; as 1st. Whether the five years limitation to an offset is to be computed from the time of commencing the action or filing the set off; and, 2d. Whether a promise implied from part payment is within the operation of the act of April 1838. In regard to the first question it was decided by this Court in Trimyer v. Pollard, 5 Gratt. 460, that if the set off accrued before the action was brought, the limitation is to be computed from the commencement of the action. There may be some doubt as to whether more than two Judges so far concurred in that decision as to make it a binding authority. However that may be, and whatever might be my own opinion of the question as an ‘"original one, (and I have not so far considered it as to ,. have formed a decided opinion on the subject,) I am : willing to consider it as settled by that case : for I consider it more important that the question should be *133 settled, than that it should be settled in any particular way. In regard to the second question it has never been decided by this Court and is one of very great doubt and difficulty. It can never arise under our new Code, and is therefore becoming daily a question of less importance. For the present I forbear to express even the inclination of my own mind upon it.
I think the Court erred in overruling the plaintiff’s motion for a new trial for the same reasons for which I think it erred in not excluding the evidence introduced by the defendant in support of the set off.
On the whole I am for reversing the judgment.
Daniel, J. concurred in the judgment of the Court.
Allen, J. concurred in the opinion of Moncure, J.